UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOHN ALLEVA,

                Plaintiff,

  -against-

NEW YORK CITY DEPARTMENT OF INVESTIGATION,

                Defendant.
-----------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 1 2 2010 ★
BROOKLYN OFFICE

**MEMORANDUM AND ORDER**
Case No. 04-CV-4965 (FB) (ALC)

*Appearances:*
*For the Plaintiff:*
THOMAS F. BELLO, ESQ.
Thomas F. Bello, Esq., P.C.
2 Green Street, 2nd Floor
Staten Island, New York 10310

*For the Defendant:*
MICHAEL A. CARDOZO, ESQ.
Corporation Counsel of the
City of New York
BY:   ALICIA H. WELCH, ESQ.
        Assistant Corporation Counsel
100 Church Street
New York, New York 10007
*On the Brief:*
BRUCE ROSENBAUM, ESQ.

**BLOCK, Senior District Judge:**

John Alleva ("Alleva") is a former employee of the New York City Department of Investigation ("the DOI"); he was terminated on July 19, 2004. Alleva believes that he was discriminated against on account of his age because he was terminated; the DOI failed to promote him at various times; he suffered retaliation, and he endured a hostile work environment. Alleva claims that these alleged discriminatory acts violated the Age Discrimination in Employment Act ("the ADEA"), the New York State Human Rights Law ("the NYSHRL"), and the New York City Human Rights Law ("the

NYCHRL").[1] The DOI seeks summary judgment dismissing Alleva's complaint in its entirety.[2] For the reasons that follow, the DOI's motion is granted.

I

The parties agree that Alleva, then 65 years of age, was interviewed for a position with the DOI at some point in early 1998 by Clive Morrick ("Morrick"), a DOI Inspector General. Alleva was subsequently hired in June 1998; he served as a Level III Confidential Investigator ("CI") for his entire tenure. At some point during his employment, he became a DOI Peace Officer, which required him to carry certain equipment, including a firearm, handcuffs, a baton, and pepper spray. He was fired in July 2004 at the age of 71.

A. The Complaint

The Complaint alleges that Alleva "was assigned the most difficult cases in the office" during his tenure, and that he "produced the division [sic] largest share of convictions and referrals to the District Attorney." Compl. ¶ 22. Alleva believes, however, that he "was denied [pay] increases and promotions all due to his age rather than his vast

---

[1] Alleva's complaint also alleged claims under Title VII, see Compl. ¶¶ 54-57, and under state law for intentional infliction of emotional distress. Id. ¶¶ 66-69. Alleva now candidly concedes that he cannot make out either claim. See Alleva Mem. of Law at 1 (noting that Title VII is inapplicable to Alleva's claims); id. at 6 (withdrawing emotional distress claim). Accordingly, the Court deems these claims withdrawn.

[2] The DOI contends that Alleva's complaint should be dismissed in its entirety since Alleva sued the DOI—a city agency—not the City of New York itself. See N.Y.C. Charter § 396 ("All actions . . . shall be brought in the name of the city of New York and not in that of any agency . . ."). When claims "are brought against non-suable entities," the Court may construe them "as brought against the City of New York." *Thompson v. Grey*, No. 08-CV-4499, 2009 WL 2707397, at *5 (E.D.N.Y. Aug. 26, 2009). This issue is ultimately irrelevant in light of the disposition of Alleva's claims on the merits in favor of the DOI.

knowledge, effective performance, overwhelming qualifications, and tremendous experience." *Id.* at ¶ 41.

The Complaint points to two alleged remarks by Alleva's superiors in support of his claims that his six-year tenure was marked by age discrimination. The first dates to October 1998, when Alleva's "sponsor," a "Deputy Commissioner Ford," left the DOI. Martha Gumbiner ("Gumbiner"), a DOI Deputy Inspector General and Alleva's superior, told Alleva that when the "sponsors" of DOI employees depart, the employee can "forget about any future advancement opportunities." *Id.* at ¶ 15. The second comment came from Morrick, who was Alleva's direct supervisor during the period June 1998 until some time in 2003. During a staff meeting on September 26, 2002, Morrick allegedly stated "we have enough old people working here." *Id.* at ¶ 24.

In addition to these comments, the Complaint alleges that several promotions were denied to Alleva. Three "Deputy Inspector General" positions were filled by Morrick between February 1999 and April 2000; Alleva claims that he was qualified for these positions but "was not extended an invitation" to interview. *Id.* at ¶¶ 18-19. In May 2001, Morrick hired Chris Staackmann ("Staackmann") as a "Chief Investigator"; Staackmann was "younger and less qualified" than Alleva. *Id.* at ¶¶ 18-19, 23.

Morrick left the DOI at some point in 2003; John Kantor ("Kantor") became Alleva's new supervisor, but continued to exhibit "hostility and discriminatory actions" against Alleva "on the basis of his age." Compl. ¶ 32. Alleva claims that Kantor: (1) required Alleva to complete a "proactive investigation" without sufficient support; (2) disapproved one of Alleva's claims for reimbursement for a meal he purchased while

3

working on the investigation; (3) suspended Alleva's driving privileges for failing to report a February 2004 automobile accident in compliance with DOI policies; (4) ordered Alleva to surrender his firearm after "having words" with him. *Id.* at ¶¶ 31-37. Kantor also hired another unnamed person "who was younger and less experienced" than Alleva as a Chief Investigator in May or June 2004. *Id.* at ¶ 39.

Alleva was then terminated on July 19, 2004; he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 20, and the EEOC issued a right to sue letter on August 17, 2004. *Id.* at ¶¶ 40-43. In sum, Alleva believes that the following events or courses of conduct violated his rights under the ADEA, NYSHRL, and NYCHRL:

    I)      Termination (July 19, 2004)

    ii)      Failure to Promote Alleva to Chief Investigator (May/June 2004)

    iii)      Failure to Promote Alleva / Hiring of Staackmann as Chief Investigator (May 2001)

    iv)      Failure to Promote Alleva to Deputy Inspector General (February 1999–April 2000)

    v)      Hostile Work Environment (Entire Tenure)

    vi)      Retaliation (Date Unclear)

## B.    The DOI's Position

The DOI has a far different account of Alleva's tenure, and its account is supported by a 56.1 Statement of Material Facts comprised of 35 paragraphs and 37

4

documentary exhibits in support. The DOI also submitted the declarations of two DOI employees: Walter Arsenault ("Arsenault"), the former First Deputy Commissioner of Investigation for the DOI, attests to facts concerning Alleva's termination; Cynthia Mathis, the current Director of Human Resources for the DOI, attests to facts concerning Alleva's DOI salary. In sum and substance, the 56.1 Statement and its supporting exhibits and declarations lay out a series of DOI policy breaches committed by Alleva in 2003 and 2004. These breaches—to which Alleva admitted under oath in an interview of June 23, 2004—directly precipitated his termination.

C. Alleva's Response

In opposition to the DOI's statement of the case, Alleva, who is represented by counsel, offers no evidence beyond the bare allegations of his Complaint. He has submitted a threadbare three-page 56.1 Statement of Material Facts, which cites no documents or evidence and fails to controvert any of the DOI's facts beyond the vague and conclusory statement "Plaintiff disputes the substance of this paragraph[.]" *See* Alleva 56.1 Statement *passim* (July 30, 2009). There are also two declarations from Alleva and one by his attorney. Each purports to be "under penalty of perjury" pursuant to 28 U.S.C. § 1746, but each is unsigned. *See* Alleva Decl. at 4 (July 30, 2009) (unsigned); Alleva Am. Decl. at 4 (Aug. 19, 2009) (unsigned); Bello Decl. at 1, Docket Entry No. 40 (undated and unsigned). In sum, these three brief and conclusory declarations do little more than recite the allegations of the Complaint; none of them cites any evidence to controvert the DOI's Statement of Facts. Alleva's counsel also submitted a very brief memorandum of law.

Finally, Alleva himself submitted a letter directly to the Court, stating that he has "not been able to reach" his counsel and that he feels that he is "being placed in a position of having to represent myself." *See* Letter from J. Alleva (Aug. 31, 2009). This letter reiterates some of the Complaint's allegations; it further alleges that certain allegations will be proved by "documents asked for in discovery," though it fails to specify which documents were requested and not provided.[3] The letter bears Alleva's signature but is not notarized nor does it purport to declare facts "under penalty of perjury" pursuant to 28 U.S.C. § 1746.

## II

Local Rule 56.1 provides, in relevant part, that a 56.1 Statement "will be deemed to be admitted for purposes of the motion unless specifically controverted" by the opposing party. Local R. 56.1(c). Statements in opposition "must be followed by citation to evidence which would be admissible[.]" Local R. 56.1(d). Alleva's 56.1 Statement does not specifically controvert anything set forth by the DOI, nor does it cite any evidence.

The three declarations could be treated as a substitute for a 56.1 Statement. *See* 10A Wright, Miller & Kane *Federal Practice & Procedure*: Civil 3d § 2728, at 529 (1998) ("[W]hen the evidence offered in opposition to a motion . . . for summary judgment is defective in form but is sufficient to apprise the court that there is important and relevant

---

[3] Alleva's letter also appears to raise — some five years into the litigation — a new allegation of discrimination based on ethnicity. *See* Letter from J. Alleva at 4 (claiming that several other DOI employees were discriminated against on the basis of age and on the basis of Italian-American heritage). Since Alleva's letter does not allege that he himself was discriminated against on this basis, the Court has no need to consider this allegation or to determine whether the Complaint may be constructively amended at this late hour by a *pro se* letter submission.

information that could be proffered to defeat the motion, summary judgment ought not to be entered."). However, the lack of a signature renders them invalid under 28 U.S.C. § 1746, which requires the signature of the declarant.[4] *See* 28 U.S.C. § 1746 (providing that any matter required to be proved by affidavit or under oath may be proven by a written statement "declare[d] under penalty of perjury" that is "subscribed" or signed by the declarant). Since they are invalid, they cannot be considered as evidence in opposition to the DOI's motion. Even if they were signed, none of the declarations cites any evidence that controverts anything set out by the DOI's Statement of Facts. As for the memorandum of law, legal argument is not evidence. Finally, Alleva's letter of August 31, 2009, has no evidentiary value because it is unsworn.

The Court is left, therefore, with the Complaint. "A verified complaint is to be treated as an affidavit for summary judgment purposes," provided that it "meets the other requirements for an affidavit under [Federal Rule of Civil Procedure] 56(e)." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). The Complaint is not verified, however; it bears only the signature of Alleva's attorney, not the signature of Alleva himself, and Alleva's attorney does not attest to any "personal knowledge" of the Complaint's allegations. "Personal knowledge" is required under Rule 56(e)(1); moreover, a party opposing summary judgment "may not rely merely on allegations or denials in its own pleading[.]" Fed. R. Civ. P. 56(e)(2). Accordingly, the Complaint has no evidentiary weight.

---

[4] The declaration by counsel is deficient for an additional reason; counsel offers no facts based on "personal knowledge," and personal knowledge is required. Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge[.]").

Alleva thus offers no evidence of any kind in support of the allegations of his Complaint or in opposition to the DOI's motion or the DOI's Statement of Facts. Even if the Complaint, the declarations, and Alleva's letter were accepted as admissible evidence — which they are not — they do not specifically controvert anything set forth in the DOI's Statement of Facts. The DOI's Statement of Facts is therefore deemed admitted for purposes of the DOI's motion. *See* Local R. 56.1(c). The relevant facts of the DOI's Statement are set out below.

## III

For the period 1998-2002, Alleva's DOI performance reviews indicate that he was, on the whole, a satisfactory employee who: "willingly assisted" other investigators in their cases; provided "highly effective support"; and "appl[ied] himself to document intensive matters, and work[ed] well with the prosecutors' offices handling his referred matters." DOI 56.1 Statement at ¶¶ 6, 9. Notwithstanding these positive reviews, by 2003 Alleva's relationship with his employer had soured. In evaluating Alleva's performance for 2002, Morrick (then his supervisor) wrote: "[Alleva] does not approach small matters . . . with much enthusiasm . . . [Alleva] has time on his hands and should be looking for assignments. For all his experience, [Alleva] sometimes forms premature judgments about a case and does not dig sufficiently deep for evidence." *Id.* at ¶ 13.[5]

---

[5] With respect to Alleva's allegation that Morrick stated at a 2002 meeting that "we have enough old people working here," Morrick testified at his deposition that "[t]here may have been a time when I made a remark . . . of that tenor[;] that would have been self-directed. That is directed at me . . . If I said it, [I said it about myself]." Morrick Dep. Tr. at 16 (Oct. 18, 2007), Welch Decl. Ex. E. Morrick was approximately 60 years of age at the time of the alleged statement.

8

Alleva appealed this evaluation by sending a letter to Daniel Brownell ("Brownell"), the DOI Deputy Commissioner for Investigations. *See* Mem. from J. Alleva to D. Brownell (Dec. 10, 2002), Welch Decl. Ex. L. Alleva complained of "a number of personal and discriminatory actions" by Morrick, and further added that the DOI had a discriminatory animus against him, based on: (1) Gumbiner's alleged 1998 statement; (2) the failure to promote Alleva from CI III status; and (3) perceived favorable treatment accorded to other investigators. *See* DOI 56.1 Statement at ¶ 14. Notably, Alleva's letter to Brownell made no reference of any kind to age, nor did it complain of discrimination based on age. The results of Alleva's appeal, if any, are not in the record.

On September 29, 2003, Kantor, who had by then replaced Morrick as Alleva's supervisor, conducted an inspection of all DOI Peace Officers, including Alleva; Alleva was not in possession of his handcuffs, pepper spray, and baton.[6] He was required to have these under DOI Peace Officer policy.

In October 2003, Alleva was driving his DOI-issued vehicle on the Brooklyn Bridge when he "bumped" another vehicle. Alleva did not obtain any identifying information about the other vehicle, nor did he report the accident to the DOI fleet coordinator. DOI policies and procedures required him to do both.

Between October 2003 and January 2004, Alleva made more than forty hours of non-work related telephone calls from the telephone in his DOI office; most of these calls were to family members and personal friends. More than six hours of calls were made in

---

[6] Three other DOI Peace officers were inspected at the same time; each was in possession of all required equipment.

connection with Alleva's attempt to resolve an erroneous water bill for a personal friend. These activities violated DOI policies.

On February 6, 2004, Alleva struck a pedestrian in Staten Island while driving his DOI-issued vehicle. Alleva did not obtain complete information about the pedestrian or any possible witnesses, nor did he notify the DOI fleet coordinator; DOI policies required him to do both. Alleva's driving privileges were suspended by Kantor due to his failure to report the accident.[7]

DOI personnel investigated the facts and circumstances of the February 2004 accident.[8] Kantor asked Alleva to surrender his firearm during the investigation, but Alleva was not carrying his firearm, a second violation of DOI Peace Officer policies.

Arsenault and Brownell interviewed Alleva under oath on June 23, 2004. After demanding and receiving immunity against prosecutorial use of his testimony, Alleva admitted that he violated DOI policies with respect to: reporting accidents; using DOI phones and fax machines; and attempting to use his office to help a friend with a water bill. Alleva also admitted that he violated DOI Peace Officer policies by failing to carry his firearm in February 2004.

In a letter dated July 13, 2004, Arsenault terminated Alleva's employment effective July 19, 2004. Arsenault's letter did not specify the reasons for Alleva's

---

[7] Alleva did notify James Christo, a fellow investigator, about the accident. With respect to Alleva's allegation that "no other employee was subjected" to a similar suspension of driving privileges, Kantor testified in his deposition that he has suspended at least one other employee's driving privileges. Kantor Dep. Tr. at 39:09-22.

[8] The investigation was evidently delayed by Alleva's absence from work due to medical concerns.

termination, but Arsenault's declaration states that Alleva's admission to multiple violations of DOI policies precipitated his termination. *See* Arsenault Decl. ¶¶ 4-5.[9]

IV

A.  **Standard of Review**

A party's motion for summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant must demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are in dispute only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party," *see id.*, and the facts "must be viewed in the light most favorable to the nonmoving party . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal citation omitted). If the movant succeeds in showing that no genuine issue remains to be tried, then summary judgment should be granted unless the opposing party can "come forward with 'specific facts

---

[9] For purposes of completeness, although Alleva has adduced no evidence in support of his allegations that he was unjustly denied pay raises, the Court notes that Alleva received at least one pay increase during his tenure. *See* Personnel Action re: Alleva, John (July 1, 2000) (raising Alleva's pay by $1,064 per year, a net effective raise of 2.3%), Welch Decl. Ex. K. The DOI's records indicate also that Alleva was the highest-paid CI during his tenure. *See* Welch Decl. Ex. C. As to Alleva's claim that he was unjustly denied reimbursement for an overtime meal, the Court notes that the DOI has submitted evidence indicating that the reimbursement request was approved and paid. *See* Pay Inquiry for Alleva, John (Apr. 1, 2009) (reflecting payout of $16.50 for "Supper Money" incurred January 23, 2004), Welch Decl. Ex. HH.

11

showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (other internal citations omitted).

Since "direct evidence of an employer's discriminatory intent will rarely be found," motions for summary judgment in employment discrimination actions should be evaluated with particular caution. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations omitted). Nonetheless, a plaintiff who believes that he has been subjected to discriminatory animus "must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Id.* at 110 (internal citation omitted). "It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines*, 239 F.3d 456, 466 (2d Cir. 2001).

## B. Alleva's Claims

### 1. *Federal Claims — Age Discrimination Under the ADEA*

#### a. ADEA's Statute of Limitations

There is a threshold question of which claims may be considered in light of the ADEA's relatively short statute of limitations of 300 days. *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 328 (2d Cir. 1999); 29 U.S.C. § 626(d)(1)(B) (defining the statute of limitations). The statute of limitations was tolled when Alleva submitted his claim to the EEOC on July 20, 2004.[10] *See* Welch Decl., Ex. DD (Alleva's EEOC claim form). Discriminatory acts that occurred prior to September 24, 2003, are therefore time-barred.

---

[10] The EEOC form is stamped "Received" on July 22, 2004, but was signed by Alleva (and notarized) on July 20, 2004. The Court will give Alleva the benefit of the intervening two days, although they ultimately have no bearing on the statute of limitations issue.

12

Alleva contends that the ADEA's statute of limitations does not apply because he has been subjected to a "continuing violation" of his rights. Alleva Mem. of Law at 2. The "continuing violation" doctrine provides that "if a plaintiff has experienced a continuous practice and policy of discrimination," the statute of limitations will not begin to run "until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (internal marks and citation omitted). The doctrine "is heavily disfavored in the Second Circuit," however, and "courts have been loath to apply it absent a showing of compelling circumstances." *Trinidad v. N.Y. City Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (internal marks and citations omitted). Moreover, the continuing violation doctrine may not be applied to otherwise time-barred "discrete discriminatory acts . . . even where they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Discrete" acts of discrimination include "termination, failure to promote, denial of transfer, or refusal to hire"; each "starts a new clock for filing charges alleging that act." *Id.* at 113-14.

Alleva's termination claim is timely. As for the multiple times he alleges he was passed over for promotion, *National Railroad* bars the consideration of any failures to promote that occurred before September 24, 2003. With respect to the hostile work environment and retaliation claims, the Court cannot discern from Alleva's submissions whether there exist "compelling circumstances" to justify the application of the "heavily disfavored" continuing violation doctrine. Since the Court ultimately concludes that both claims fail on the merits, the Court has no need to determine whether the continuing violation doctrine applies in these circumstances.

13

### b. Termination

Until quite recently, ADEA claims were analyzed under the familiar "burden-shifting" framework of *McDonnell Douglas*. *See, e.g., D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d, 194-95 (2d Cir. 2007). However, the Supreme Court last term cast doubt on the continued application of *McDonnell Douglas* to ADEA claims: "This Court has never held that this burden-shifting framework applies to ADEA claims. And, we decline to do so now." *Gross v. FBL Fin. Servs.*, 129 S.Ct. 2343, 2349 (2009); *id.* at 2349 n.2 (reiterating that Supreme Court "has not definitively decided whether the evidentiary framework of *McDonnell Douglas*" is "appropriate in the ADEA context").

*Gross* makes clear that, regardless of whether the burden-shifting framework retains any analytical viability, Alleva would ultimately have to establish "that age was the 'but-for' cause of the employer's adverse action." *Id.* at 2351. Since the Court ultimately concludes that no evidence in the record shows that age was a cause — much less the "but-for" cause — of Alleva's termination, it has no need to consider whether the burden-shifting analysis remains applicable. *See, e.g., Holowecki v. Fed. Express Corp.*, 644 F. Supp. 2d 338, 352 (S.D.N.Y. 2009) (disposing of ADEA claims on merits because "plaintiffs have failed to make out even a colorable case of age discrimination," "regardless of whether or not [*McDonnell Douglas*] continues to apply").

Alleva cannot prove that his age was the "but-for" cause of his termination. He admitted to multiple violations of DOI policies and procedures at his interview on June 23, 2004; he was terminated within weeks. Arsenault's declaration states that Alleva's

14

termination was on account of these violations, and Alleva offers no evidence to the contrary.

### c. Failure to Promote Claims

ADEA's statute of limitations bars consideration of the alleged failures to promote Alleva in 1999-2000 and 2001. *Nat'l R.R.*, 536 U.S. at 113-14. The only "failure to promote" claim that survives, therefore, is Alleva's allegation that he was unjustly denied a promotion to Chief Investigator by Kantor in 2004. In light of *Gross*, Alleva would ultimately have to prove by a preponderance of the evidence that age was the "but-for" cause of a decision to deny him this promotion. *Gross*, 129 S.Ct. at 2351; *see also Faison v. Dist. of Columbia*, 664 F. Supp. 2d 59, 67 (D.D.C. 2009) (applying *Gross* to failure to promote claims).

Alleva cannot possibly make out this claim: he did not even apply for the position that he contends was unjustly refused to him. *Compare* Kantor Dep. Tr. at 18:16-17 ("I don't recall [Alleva] applying for that position."), Welch Decl. Ex. N, *with* Alleva Dep. Tr. at 58:03-09 ("[Q.] [W]ere there specific promotions that you applied for and did not receive? [A.] No, I don't think it works that way in D.O.I. unless it changed since I left you don't apply . . . I don't know what you're talking about."), Welch Decl. Ex. O. Alleva contends that whether or not he applied is irrelevant because "[i]t was developed during discovery that a formal application was unnecessary when the agency wanted an individual to be promoted." *Id.* Alleva submits no evidence of such a policy. Even if such a policy existed, Alleva submits no evidence that any of the hiring authorities at the DOI were even aware that he might be interested in the position. Without consciousness of his

candidacy, it is impossible for hiring authorities to have rejected it. It is logically impossible for Alleva's age to have been a "but-for" cause of a decision that was never made.

### d. Hostile Work Environment

A hostile work environment under the ADEA is one in which "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Fordham v. Islip Union Free Sch. Dist.*, 662 F. Supp. 2d 261, 271 (E.D.N.Y. 2009) (quoting *Kassner v. 2d Ave. Delicatessen*, 496 F.3d 229, 239 (2d Cir. 2007). To make out such a claim, Alleva must prove that: (1) he was subjected to harassment, based on his age, that was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment"; and (2) "that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal citation omitted).

To be "severe or pervasive," Alleva must show that the conduct was: (1) "objectively severe or pervasive . . . [creating] an environment that a reasonable person would find hostile or abusive"; (2) "subjectively" severe or pervasive, in that Alleva must have perceived it as hostile or abusive; and (3) on account of Alleva's age. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). Objective severity is assessed on a "totality of the circumstances," which may include: (1) "frequency of the discriminatory conduct"; (2) "its severity"; (3) "whether it is physically threatening and humiliating, or a mere offensive utterance"; and (4) "whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

With these principles in mind, it is clear that Alleva's hostile work environment claim fails. Even if the Court were to accept the bare allegations of the Complaint as evidence, Alleva's allegations of hostility fall well short of demonstrating an objectively hostile work environment. Aside from his complaints about being passed over for promotion, his specific claims of "hostility" are limited to two stray and only arguably offensive remarks separated by four years—hardly the makings of a "severe and pervasive" atmosphere of humiliation. *See, e.g., Kassner*, 496 F.3d at 240-41 (reversing district court that dismissed hostile work environment claim for failure to state a claim where first plaintiff alleged being subjected to "repeated" and "degrading" comments including "drop dead," "retire early," "take off all of that make-up," and "take off your wig"; affirming district court's dismissal of claims of second plaintiff who alleged only "pressure" to "retire from employment"). Gumbiner's 1998 comment, construed objectively, had nothing to do with age but everything to do with workplace relationships. Morrick's 2002 comment, construed objectively, might be found mildly offensive by some, but falls far short of "severe" or "humiliating."

  e. Retaliation

  To make out a claim of retaliation in violation of the ADEA, Alleva must show that he: (1) participated in a protected activity; (2) that the DOI knew of the protected activity; (3) that he suffered an adverse employment action; and (4) that the protected activity and the adverse employment action were causally related. *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001) (internal citation omitted); *see also* 29 U.S.C. § 623(d) (ADEA is violated whenever an employer retaliates against an employee because

employee "has opposed any practice made unlawful by this section, or because [employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter").

Alleva's discussion of his retaliation claim in his submissions in opposition to the DOI's motion is a single paragraph that makes only two cursory references to possible "protected activities" referred to in his Complaint: (1) his administrative challenge to his 2002 performance rating; and (2) "when he met with DOI commissioners about [Gumbiner's] statements" in 1998. *See* Alleva Mem. of Law at 6.

Alleva does not explain how either event constituted a protected activity, nor does he explain how he was retaliated against for complaining. The 2002 letter to Brownell did not complain of any age-based discrimination, so it does not qualify as a protected activity; even if it did, Alleva does not establish a causal link to any adverse employment action he suffered on account of this letter, which was submitted more than 18 months before his termination. Morrick, the chief target of Alleva's administrative challenge, ceased being Alleva's supervisor at some time in 2003, and had nothing to do with his discipline and termination in 2004. Morrick Dep. Tr. at 9:17-21, 22:11-15, Welch Decl. Ex. F. As for Alleva's "conversation" in 1998 about Gumbiner's 1998 comment, Alleva fails to establish that Gumbiner's comment was related to Alleva's age; even if it was, he does not explain how he was retaliated against because of any complaint about Gumbiner. *See* Alleva Mem. of Law at 6.

In short, Alleva's one-paragraph discussion of his retaliation claims, which cites no evidence and offers no argument, falls short of demonstrating that a genuine issue of fact remains for trial.

2.  *State & Municipal Law Claims Under the NYSHRL & the NYCHRL*

Only Alleva's state and municipal law claims remain, and the Court must determine whether to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c) (district court "may decline to exercise supplemental jurisdiction" if, among other circumstances, the "court has dismissed all claims over which it has original jurisdiction."). The Second Circuit has set forth several factors to be considered when deciding whether to exercise supplemental jurisdiction: "(1) whether state law claims 'implicate[] the doctrine of preemption,' . . . (2) 'judicial economy, convenience, fairness, and comity,' . . . (3) the existence of 'novel or unresolved questions of state law,' . . . (4) whether state law claims 'concern the state's interest in the administration of its government.'" *Drake v. Lab. Corp. of Am. Holdings*, 323 F. Supp. 2d 449, 452 (E.D.N.Y. 2004) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Travelers Ins. Co. v. Keeling*, 996 F.2d 1485, 1490 (2d Cir. 1993).

"Age discrimination claims brought pursuant to the NYSHRL and the NYCHRL are analyzed under the ADEA framework[.]" *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.1 (2d Cir. 2009). *Gross* has significantly altered the framework of ADEA claims however, and *Gross* may (or may not) alter the framework of NYSHRL and NYCHRL

claims. There exists but one New York case citing *Gross*, though that case strongly implies that the "but-for" causality required by *Gross* is now the law of New York. *See Anderson v. Young & Rubicam*, 890 N.Y.S.2d 45, 46 (1st Dep't 2009) (affirming trial court's refusal to give "mixed motive" jury charge on age discrimination claims, citing *Gross*).

Notwithstanding this single case, there remains a question of whether the analytical frameworks of the ADEA, the NYSHRL, and the NYCHRL will continue to mirror one another after *Gross*; therefore, the Court declines to exercise its supplemental jurisdiction over Alleva's state and municipal law claims.

## V

The DOI's motion is granted as to Alleva's federal claims. Alleva's NYSHRL and NYCHRL claims are dismissed without prejudice to renewal in state court. The complaint is therefore dismissed in its entirety.

**SO ORDERED.**

s/Frederic Block<br>
FREDERIC BLOCK<br>
Senior United States District Judge

Brooklyn, New York
March 11, 2010